Referring to contracts that the work shall be done to the satisfaction of the recipient party, Folger, J., in City of Brooklyn v. Brooklyn City R. Co., 47 N. Y., at page 479, says:

"Such satisfaction is not an arbitrary or capricious one. It has its measure by which it can be filled. That which the law shall say a contracting party ought in reason to be satisfied with, that the law will say he is satisfied with."

See, also, Folliard v. Wallace, 2 Johns. 395; Butler v. Tucker, 24 Wend., at page 449; Miesell v. Insurance Co., 76 N. Y., at page 119.

The rule is different, of course, where the contract involves a question of personal taste or individual preference. Boiler Co. v. Garden, 101 N. Y., at page 390, 4 N. E. 749; Gray v. Bank (City Ct. N. Y.) 10 N. Y. Supp. 5; Id. (Com. Pl.) 14 N. Y. Supp. 155. Such cases are: Making a suit of clothes. Brown v. Foster, 113 Mass. 136. Undertaking to fill a particular place as agent. Tyler v. Ames, 6 Lans. 280. Making a bust. Zaliski v. Clark, 44 Conn. 218. Painting a portrait. Hoffman v. Gallaher, 6 Daly, 42; Moore v. Goodwin, 43 Hun, 534. Making a lithographic design. Gray v. Bank (City Ct. N. Y.) 10 N. Y. Supp. 5; Id. (Com. Pl.) 14 N. Y. Supp. 155. Giving lessons in drafting patterns. Johnson v. Bindseil (Com. Pl.) 8 N. Y. Supp. 485. The work done by the plaintiff was of a mechanical nature, requiring great expense in moving and putting up the machinery, and it would necessitate a like expenditure to take down and remove the same. It is evident, therefore, that the right to reject was not left to the whim or caprice of the defendants, but was to depend on some objection founded upon reason; and, as this involved a question peculiarly for the jury, it should not have been withdrawn from their consideration. The case is unlike one where a horse, or other thing which may be returned without altering its condition, is given on trial. There the return might be enforced under the contract to take back if the thing proves unsatisfactory.

Having been nonsuited, the plaintiff is entitled to the most favorable inferences deducible from the evidence, and all questions of fact are to be deemed established in his favor. So construed, the record shows error.

For these reasons, without considering the other questions presented, the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

---

(15 Misc. Rep. 69.)

## SWENSON v. BROOKLYN HEIGHTS R. CO.

(City Court of Brooklyn, General Term.  December 23, 1895.)

EXPERT TESTIMONY—RELEVANCY.

In an action for personal injuries to an eight year old child, where a medical expert went into a general discussion of the disease which had resulted from plaintiff's injuries, the various causes producing it, and some of its possible results, without any allusion as to the probable effect of the disease on plaintiff, his testimony should have been stricken out.

Appeal from trial term.

Action by Ellen Swenson, an infant, against the Brooklyn Heights Railroad Company, for personal injuries. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before CLEMENT, C. J., and OSBORNE, J.

Moore, Wallace & Dudley, for appellant.

Ernest M. Welch, for respondent.

OSBORNE, J.   Action to recover damages for injuries to plaintiff, a child eight years old, caused through defendant's negligence. On the trial, defendant's negligence was admitted, and also plaintiff's freedom from contributory negligence; so that the only question litigated was the extent of plaintiff's injuries. Plaintiff had a verdict for $4,000, and from the judgment entered thereon, and the order denying a motion for a new trial, defendant appeals.

On the trial, an expert witness, called on behalf of plaintiff to give evidence as to the extent of plaintiff's injuries, having testified, inter alia, that the plaintiff had chorea, was asked the following question:

"Q. From your examination, state the treatment and the course of chorea in her [plaintiff's] case—what it will be—the best way you can. Defendant's Counsel: I object to the question, as irrelevant, immaterial, and incompetent, and that there is no connection shown between the injury in this case and the 'chorea,' so called, and your honor will note my exception. The Court: The exception will be noted. Answer the question. Defendant's Counsel: How can he tell the course of something that has not happened? The Court: What will be the course, from his knowledge as an expert, of the disease? Defendant's Counsel: I object to that, on the ground that an expert is incompetent to testify to the future course of the disease. The Witness: .The disease chorea, and the allied diseases, of which there are several of the same kind, are caused by irritation of the brain. This irritation may be the result of injuries to the head, of shock, of fright, or a poisoned condition of the brain resulting from different fevers, —from the poison of typhoid, or diphtheria, or scarlet fever, or diseases of that kind. When the irritation has reached a certain point, then these motions begin, usually in the hands, and spread to different parts of the body, and in time may become general, so that all the muscles of the body, the arms, legs, and face, are in a state of motion. The effect of this irritation also injures the brain. It is not at all uncommon to see cases of chorea who are stupid, and almost on the verge of idiocy. Now, in regard to the ultimate results of the disease,—that is, as to its being able to be cured,— we usually find that simple chorea, not due to any organic injury of the brain, is quite curable, but where we have to deal with an organic disease of the brain,—where injuries of the brain have occurred which cannot be cured by any means,—there the chorea persists and remains with the patient. They cannot get rid of it, and it lasts for life, with a progressive mental degeneration as well as the muscular movements. Defendant's Counsel: I move to strike out in regard to chorea arising from injury to the brain organically, as having no connection with this case whatever, and because his testimony is not confined to results in this case. He is giving general lectures."

The motion was denied, and defendant's counsel excepted.

We are of the opinion that the motion to strike out should have been granted, and that the exception to the refusal so to do was well taken. The question put by plaintiff's counsel, and as modi-

fied or amended by the court, substantially called upon the witness to state, from his knowledge as an expert, the treatment and what would be the course of chorea in plaintiff's case. We think that the question itself was a proper one to put, but we look in vain in the answer for the slightest allusion to the plaintiff's case to which the question was addressed. The witness seems to have entered into a general discussion of the disease known as "chorea," the various causes producing it, and some of the possible ultimate results thereof. Nowhere does the witness state or intimate or express an opinion as to what the course of the disease would be in plaintiff's case, or the probability or improbability of her recovery. On the contrary, the witness' answer was confined to the possible effects attending the progress of the disease in general, and its probable duration, and the results that might ensue to some person or other afflicted with the disease, and those results dependent on the producing cause of the disease. We cannot say that this evidence did not prejudice the defendant, or influence the amount of the verdict. It improperly placed before the jury results that might ensue, future consequences that were possible, and it would be most natural that the jury, in estimating the damage to plaintiff, should take these elements into consideration in fixing the amount of the verdict. Strohm v. Railroad Co., 96 N. Y. 305; Tozer v. Railroad Co., 105 N. Y. 617, 11 N. E. 369. This conclusion renders it unnecessary to consider any other exception in the case.

For the reasons stated, we think that the judgment and order denying motion for a new trial should be reversed, and a new trial ordered, with costs to abide the event.